UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,          Case No. 20-cr-20483

v.                      Hon. Terrence G. Berg
                        United States District Judge

KENNETH GEORGE ZEHNDER,

          Defendant.

---

**THE UNITED STATES OF AMERICA'S
SENTENCING MEMORANDUM**

---

Zehnder sexually abused two minor children for years, repeatedly raping the older child. They had no escape and his abuse was relentless. Even when one of the minors reported his conduct to law enforcement, Zehnder eluded charges and the abuse resumed.

Zehnder's abuse became a federal offense when he took the same two minor children, who were close to him and known to him, on separate out-of-state trips in his truck for the purpose of sexually abusing them. Even though Zehnder accepted responsibility for an assault against one of those children, he refuses to acknowledge assaulting the other. He committed these acts after serving a prison

sentence for manslaughter. He has taken one life and horrifically damaged two others.

Zehnder will likely plead to this Court for mercy, something he never showed to the minors he abused. He does not deserve it, so the Court should not answer his call. Rather, this Court can give Zehnder's victims what evaded them for so long during his abuse---justice, safety, and peace. Consistent with 18 U.S.C. § 3553(a), this Court can and must provide a sentence that prevents Zehnder from harming another person again. The top of the guideline range is 405 months and it is the only acceptable sentence here.

## I.   ZEHNDER RAPED A CHILD IN HIS CARE.

18 U.S.C. § 3553(a) requires, in part, that the Court consider the nature and circumstances of the offense. Here, Zehnder's offense is horrific and among the most serious an individual can commit.

Zehnder took MV-1, a female born in 2004, on a multi-state trip in the truck that he drove. Zehnder knew this child and was supposed to be someone MV-1 could trust and love. But Zehnder never occupied that role, instead acting as the tormentor and abuser for MV-1 for the time that he knew her, including this trip.

Every night of the trip, except the first, he sexually assaulted her. *Id.* Every one of those nights, Zehnder either digitally penetrated MV-1 or penetrated her with his penis. *Id.* On August 19, 2019, while MV-1 and Zehnder were in Minnesota, Zehnder watched a video entitled "Teen Stepdaughter f***ed while Mom sleeps" on his phone. (PSR ¶ 18.) Then Zehnder went back to the sleeper portion of the truck where MV-1 was sleeping and raped her. Even though MV-1 pretended to sleep, she was actually awake for every horrific second of this event. After Zehnder finished raping her, he went back to the front of his truck to resume driving. *Id.*

But this would be the end of Zehnder's abuse. This time she used a cellular phone to text 911. (PSR ¶ 10.) She provided law enforcement with the location of the truck and the ability to find her. Once they made contact, she told them what happened and officers arrested Zehnder.

Law enforcement investigated and spoke to Zehnder, who denied committing the offense but stated that he would plead guilty to spare MV-1 trauma. (PSR ¶ 14.) In spite of Zehnder's assertions, video from the truck showed Zehnder leaving his driver's seat at the time of the

3

assault and entering the living area of the truck. The truck then rocked

back and forth for some time before Zehnder emerged, pulling up and

buttoning his pants from the belt area. (PSR ¶ 16.) Officers took MV-1

for a SANE exam and a DNA test matched Zehnder's DNA to MV-1.

(PSR ¶ 17.).

MV-1 later described the rape in detail to an interviewer as

summarized below:

```
Ken took the blanket off her, then took her pants down. She remembers feeling scared and trying
to get closer to the wall but she was already as tight against the wall as she could be. She kept
her eyes closed during this. Ken didn't make any sounds or say anything while he was taking her
shorts and underwear. After those were off, he started touching her. He put his hands on her vagina
but didn't put his hands inside of her. He was rubbing her vagina. Then he pulled her away from
the wall and then got on top of her. He grabbed her body and moved it closer to him. When he was
on top of her, he took his hand and put his dick inside of her vagina by grabbing it and pushing
it. It hurt when he did it, it was a sharp pain. Then he started moving in and out. His hands were
on either side of her. Before when he's done it he's kissed her and touched her boobs and her face.
This time he didn't kiss her or touch her boobs but he was touching her face. He was trying to rub
down her arms and hold her hand. He would move his hands on her thighs. During this time, her shirt
was pulled up but her bra was still on.
He said something that she couldn't understand, took his dick out and started moving his hands on
it and then made a moaning sound. He then got dressed again and started driving again. She not sure
if he ejaculated.
Afterward, her vagina hurt really bad. It still hurt at the hospital yesterday.
She hurried up and got dressed and sat in the back of the truck crying. Ken didn't know because
```

(Bates 20)

As a one-time occurrence, this would be a horrific event that

warranted a sentence within the guidelines. But it was not a one-time

occurrence. It was not the only time that Zehnder raped MV-1 on that

trip, nor was that trip the only time that he raped and abused MV-1.

(PSR ¶¶ 15, 48.) MV-1 was the subject of years of sexual abuse at the

hands of Zehnder, who she reported in 2015 to police for sexually

4

abusing her. (PSR ¶ 48.) MV-1 described some of that abuse in detail during a forensic interview:

> Ken would have sex with her at times during these assaults when he would kiss her vaginal area and her breast. She stated he would ejaculate on her chest and sometimes on blankets when he would have nonconsensual sex with her. She stated one blanket was thrown away when they moved, which she described as him ejaculating on it. This is when they lived I _____ and she was in 6th and 7th grade. During her 6th and 7th grade years, _____ stated she was sexually assaulted by Ken on a daily basis. Ken would sexually assault her vagina with his penis and fingers on multiple occasions.

(Bates 140).

Zehnder's crime is among the most serious that a person can commit. And while his conviction for this offense comes for just one incident, the nature and circumstances of this offense include a long history of abuse. Accordingly, this factor favors a sentence of 405 months' imprisonment, which is the longest sentence available under the guidelines.

## II. THE SERIAL SEXUAL ABUSE OF CHILDREN AND KILLING OF ANOTHER HUMAN REQUIRE A SENTENCE AT THE TOP OF THE GUIDELINES

The Court also looks at the history and characteristics of a defendant when determining a sentence. 18 U.S.C. § 3553(a)(1). Zehnder's repeated sexual abuse of two minors and responsibility for

5

the death of another human being warrant a sentence at the top of the guidelines.

Zehnder's defining and most relevant characteristic is his sexual abuse of children. Zehnder abused not only MV-1, but also MV-2, who was twelve at the time of the charged abuse. Zehnder was charged as part of this indictment with abusing her on a separate trip. MV-2 described that abuse in a forensic interview:

truck to sit. Ken's clothes were always on during the incidents. He would hold her down by her shoulder with one hand, his knees on the side of her, facing her, and his other hand was on her spot. His hand went inside of her once, and she said she kicked him. She says it hurt and then they started driving home. He threatened ▮▮▮ not to say anything or he would kill her and her family. ▮▮▮ did not have to touch any of his body parts. This is the only time it's ever happened, and she's never seen him touch anyone else. ▮▮▮ knew Ken was in jail because he raped ▮▮▮. When it happened, she said she tried to run away and tell people but he would pull her back and tell people she was crazy. He would make her go back in the truck and then he would go back into the truck stop.

(Bates 28.) MV-2, in a later forensic interview, explained that the abuse was longer than just on that single trip and began when she was seven. Zehnder prolifically abused MV-1 and MV-2. Zehnder refuses to take responsibility for his crimes against MV-2. It would be to his credit if he were to acknowledge this abuse, but he will not.

Zehnder's harm is not limited to his abuse of minors. Zehnder's criminal history includes a manslaughter conviction in 2003. (PSR ¶ 40.) In that case, as described below in a witness statement from the

police report, Zehnder pointed a loaded firearm at a friend and

accidentally killed him:

> He stated he was here in the living room.  He heard the conversation going on down the hallway in the bedroom between KENNY and ▮▮▮ about pointing the gun.  ▮▮▮ stated he also heard the bolt-action slide of the weapon occur.  He recognizes the sound as the gun being racked or loaded.  He stated he went into the hallway and got to the doorway, when he saw ▮▮▮ standing over by the east side wall and window.  ▮▮▮ stated, "You're gonna end up hurting someone."  About the same time, ▮▮▮ stated, "Don't point the gun at me; it's probably loaded." ▮▮▮ also heard KENNY state, "It's not loaded.  I don't keep my guns loaded," and ▮▮▮ stated he thought, while KENNY was talking, the gun went off.

(Bates 92.) Zehnder received a 30 month to 15-year sentence. Zehnder's

behavior in custody was poor. (PSR ¶ 40.) He had 17 separate

misconducts and was not paroled until May 2009. Once paroled, his

record on supervision was not exemplary either, as Zehnder absconded

from his parole. *Id.*

Zehnder's other personal characteristics also do not tip the scales

in favor of a sentence less than 405 months. Zehnder has a history of

substance abuse but it appears to have abated at the time of this

offense. (PSR ¶¶72-78.) Zehnder has a strong recent employment

history but being a hard-working rapist is hardly a quality that

warrants a lower sentence. (PSR ¶¶ 84-87.)

Zehnder likely will claim that he had a very difficult childhood

and that it is a mitigating factor. Part of that statement is true.

Zehnder had a difficult childhood, but the Court should not reduce his

sentence for that reason. Zehnder's ACE score is 10 out of 10, indicating numerous events in his childhood that placed him at risk for offending. (PSR ¶ 70.) For a younger offender, this may carry more weight. At that point, the experience is much closer in time and there may not have been an opportunity for interventions to blunt the effect of trauma. But now, at 37, Zehnder's difficult childhood does not provide a reason for this Court to gift him with a lower sentence than one at the top of the guidelines. Zehnder does not get a lower sentence for destroying the childhoods of others because of his own background, especially after ample opportunities to receive treatment and cease his abuse.

Moreover, Zehnder's claim of sexual abuse as a child should not result in a shorter sentence. There is a pervasive misbelief that being a victim of sexual abuse causes someone to become a perpetrator themselves. There is no question that victims of childhood sexual abuse have higher rates of violent offenses and substance abuse later in life. *See https://www.d2l.org/wp-content/uploads/2017/01/Statistics_5_Consequences.pdf*. But far too often in the search for answers as to why some do the unthinkable, there is a desire to form too strong a correlation between prior

victimization and offending against children. Some studies have shown that abusers often make up claims of prior abuse for sympathy, and the strength of the correlation between prior victimization and offending is a matter of some debate. See Anna C. Salter, Predators: Pedophiles Rapists and Other Sex Offenders, 72-73 (2003). Regardless of whether a correlation exists, the vast majority of those who are sexually abused as children do not go on to abuse others.

https://livingwell.org.au/managing-difficulties/addressing-the-victim-to-offender-cycle/. The focus now must be on protecting others from Zehnder and not Zehnder's childhood. Zehnder has demonstrated that he will relentlessly abuse children and that even a report to law enforcement will not cease his abuse.

Zehnder's persistent history of victimizing children, his prior reckless homicide of another, his prior behavior in custody, and his failure to acknowledge the abuse of MV-2 warrant a sentence at the top of the guidelines.

## III. FOR THE SAKE OF CHILDREN AND THE REST OF THE COMMUNITY, THE HIGHEST GUIDELINE SENTENCE IS REQUIRED

The Court is also required to consider the need to protect the public from further offenses Zehnder could commit, to punish Zehnder for his offense, and to deter Zehnder and others from committing similar offenses. 18 U.S.C. § 3553(a)(2)(A-C). These factors all favor a maximum sentence because the offense here is of the utmost seriousness, amplified by Zehnder's prior conviction for manslaughter. Zehnder needs to be punished as his prior prison sentence has not deterred him. Finally, the need to protect the public is great given that he sexually abused two children for several years and has previously taken another man's life. All these factors favor a sentence at the top of the guidelines.

## IV. CONCLUSION

This case is not the result of a single-time event but the culmination of years of systemic and horrific abuse of two children perpetrated by Zehnder. He has permanently affected the lives of his victims, who will forever have to deal with the memories and aftermath of his sexual assaults. Zehnder cowardly refuses to acknowledge his

10

assaults on MV-2, and likely only acknowledges the assaults on MV-1

because DNA evidence makes a denial impossible. Now, to address

Zehnder's crimes and to satisfy the objectives set forth by Congress in

18 U.S.C. § 3553(a), the Court must sentence Zehnder to 405 months

imprisonment to protect the public, to avoid a sentence that unduly

depreciates the serious nature of this offense, and that provides for the

punishment necessary for this horrible offense.

Respectfully submitted,

DAWN N. ISON
United States Attorney

*s/Christopher W. Rawsthorne*
CHRISTOPHER W. RAWSTHORNE
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9160
christopher.rawsthorne@usdoj.gov

Dated: January 11, 2023

11

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2023, I electronically filed the foregoing document for the government with the Clerk of the Court of the Eastern District of Michigan using the CM/ECF system, which will send notification of such filing to all users of record via electronic mail.

*s/Christopher W. Rawsthorne*
CHRISTOPHER W. RAWSTHORNE
Assistant United States Attorney
